Gregory W. Seibt (021321)
Alexandra Mijares Nash (023364)
Kiri T. Semerdjian (033775)
**RUTILA, SEIBT & NASH, PLLC**
6803 E. Main Street, Suite 1116
Scottsdale, Arizona 85251
Telephone: (480) 712-0035
Email: greg@rsnlawaz.com
Email: ali@rsnlawaz.com
Email: kiri@rsnlawaz.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Sagers, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Arizona State University; a State Education Institution; Dr. Sethuraman Panchanathan, an individual;<br><br>Defendant. | No.<br><br>**COMPLAINT**<br><br>**(1) Breach of Contract**<br>**(2) Constructive Discharge**<br>**(3) Violation of Arizona Whistleblower Statutes**<br>**(4) Gender Discrimination Under Title VII of the Arizona Civil Rights Act ("ACRA")**<br>**(5) Gender Discrimination Under Title VII of the Civil Rights Act of 1964 (the "Act")**<br>**(6) Gender Discrimination Under Title IX of the Education Amendments of 1972 ("Title IX")**<br>**(7) Respondeat Superior**<br>**(8) Breach of the Duty of Good Faith and Fair Dealing**<br>**(9) Intentional Infliction of Emotional Distress**<br><br>**(Jury Trial Demanded)** |

Plaintiff Dr. Cynthia Sagers ("Dr. Sagers") for her Complaint against Defendants Arizona State University ("ASU") and Dr. Sethuraman Panchanathan ("Dr. Panchanathan") alleges as follows:

/ / /

**Parties**

1. Dr. Sagers is an individual residing in Maricopa County, Arizona.

2. ASU is a state-funded education institution located in Maricopa County Arizona.

3. Dr. Panchanathan was at all times material to this action an employee of ASU and a resident of Maricopa County, Arizona.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under, *inter alia*, Title VII of the Civil Rights Act of 1964 (the "Act") and Title IX of the Education Amendments of 1972.

5. This Court also has jurisdiction over Dr. Sager's common law and state law claims pursuant to 28 U.S.C § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). A substantial part of the acts and/or omissions giving rise to the claims occurred in this District.

7. Dr. Sagers has exhausted her administrative remedies with respect to her Title VII claims by virtue of having filed a charge(s) of discrimination with the United States Equal Employment Opportunity Commission and commencing this action within ninety days of receipt of her Notice of Right to Sue.

**General Allegations**

8. On July 27, 2018, ASU hired Dr. Sagers as a Vice President of Research with an annual salary of $275,000.

9. Dr. Sagers' direct supervisor was Dr. Panchanathan, Executive Vice President of ASU Knowledge Enterprise and Development and Chief Research and Innovation Officer.

10. Soon after beginning her employment, Dr. Sagers, along with several other ASU employees working under Dr. Panchanathan, were subjected to hostile, volatile, inappropriate, and disparate treatment by Dr. Panchanathan, which steadily worsened over time.

11. Dr. Panchanathan led the office with fear and intimidation and routinely

2

retaliated against employees who expressed concern regarding his behavior by subjecting them to adverse treatment including hostility, demotion, and even termination of employment without just cause.

12. Dr. Sagers was personally subjected to this treatment at the hands of Dr. Panchanathan at ASU.

13. On August 28, 2019, during a routine assessment of the Research Office conducted by ASU's Human Resources Department ("HR"), Dr. Sagers reported honestly about her assessment of Dr. Panchanathan's actions that created an atmosphere of volatility and hostility in the office. In response to the expressed grievances, Elaine Harrington ("Ms. Harrington") in HR confirmed that she would conduct an in-office climate survey regarding Dr. Sagers' claims.

14. Following Dr. Sagers' report to HR, and presumably in response to the HR investigation that it prompted, Dr. Panchanathan's hostility towards Dr. Sagers grew exponentially.

15. On September 4, 2019, at Dr. Panchanathan's request, Dr. Sagers met with Dr. Panchanathan in his office to discuss her performance.

16. During this meeting Dr. Panchanathan expressed that he was disappointed that Dr. Sagers was allegedly not working hard enough to increase the number of small proposals (research proposals of less than $10,000.00 in value) submitted by researchers at ASU.

17. In fact, the function and role of working on the smaller proposals is tasked to other personnel in other departments and was not one of Dr. Sagers' responsibilities, nor would it be a productive use of Dr. Sagers' time as an executive leader in the office who should focus her time, and indeed, was hired to work on larger proposals – which Dr. Sagers explained to Dr. Panchanathan during this meeting.

18. In response, Dr. Panchanathan lashed out at Dr. Sagers and told her that he is often required to do work that he does not want to do, but performs the work, nevertheless.

19. On October 2, 2019, in another meeting with Dr. Panchanathan, he informed Dr. Sagers that he wanted to conduct a 360 Performance Review (the "Performance Review")

3

of Dr. Sagers' performance to determine if she was meeting her performance metrics, expectations, and job functions.

20. On October 15, 2019, HR began the Performance Review, and the survey was delivered to participants on November 20, 2019.

21. As part of the process a total of only three (3) women on the team were asked to conduct a Performance Review, but only Dr. Sagers and one other individual complied and participated in the review.

22. On December 19, 2019, Dr. Panchanathan announced he was nominated to serve as director of the National Science Foundation and would take a leave of absence from ASU upon his confirmation.

23. As Vice President of Research, Dr. Sagers would be the presumptive successor to Dr. Panchanathan upon his departure, given her rank, qualification over other candidates, and interest in the position.

24. On December 27, 2019, Dr. Sagers met with ASU HR Professional Coach Jillian McManus ("Ms. McManus") to review the results of the October 15, 2019 Performance Review. During this meeting Ms. McManus informed Dr. Sagers that she had performed well in the review, and that there were no areas of concern resulting.

25. However, despite the fact that Dr. Sagers had excelled in the Performance Review, and was meeting all of her performance metrics, job qualifications, and job functions, on January 2, 2020, Dr. Sagers was called into a meeting with Dr. Panchanathan and his chief of staff, Adriana Kuiper, during which Dr. Panchanathan inexplicably informed Dr. Sagers that he planned on demoting her.

26. The new position was to be a 50% administrative position and 50% faculty position through June 30, 2020. Then on July 1, 2020 the position was to convert to 100% faculty status. The demotion would also require Dr. Sagers to work remotely through the Polytechnic Campus, effectively exiling her from the university.

27. Further, the new position came with a loss of administrative staff and a 25% salary reduction which was to become effective on July 1, 2020.

4

28. The demotion also effectively precludes Dr. Sagers from ever being considered at another university for the role of Vice President of Research ("VPR") – in effect dealing a death-blow to her career aspirations.

29. Following Dr. Panchanathan's announcement of intent to effect what would be a retaliatory demotion of Dr. Sagers, Dr. Sagers, through counsel, sent ASU a letter dated April 13, 2020, (the "Grievance Letter"), detailing the hostile, discriminatory, abusive, and illegal conduct Dr. Sagers and others within the research office at ASU were subjected to by Dr. Panchanathan, and the resulting environment of hostility and abuse within the office.

30. The Grievance Letter also put ASU on notice of Dr. Panchanathan's retaliatory and improper basis in planning to demote Dr. Sagers, and her objection to the proposed demotion in certain detail.

31. Consequently, ASU agreed to table the proposed adverse employment action, and to maintain the status quo in order to allow it to conduct an internal investigation regarding Dr. Sagers' claims, and ultimately to determine whether or not to demote Dr. Sagers, or to permit her to maintain her position as Vice President of Research. At the conclusion of its investigation, ASU inexplicably decided to demote Dr. Sagers, and to institute the resulting change in title/rank, salary, staff and the like effective, as of December 1, 2020.

32. As a result of Dr. Panchanathan's retaliatory actions as described above, Dr. Sagers was effectively removed from the line of succession that would have advanced her to greater status in the office, to succeed Dr. Panchanathan as VPR when he left to fill the Director of the National Science Foundation position.

33. To further conflagrate matters, aside from Dr. Sagers' demotion, Dr. Woodbury, a less experienced, less qualified male colleague, was given Dr. Sagers' responsibilities as VPR and was then in a position to succeed Dr. Sagers as VPR. At the time of the threatened demotion, Dr. Sagers was meeting all of her metrics, excelling at her functions and outperforming Dr. Woodbury on proposal submissions.

34. Dr. Sagers is not the only victim of Dr. Panchanathan's hostility, intimidation, abuse, and reign of terror which has been experienced and witnessed by several other

5

employees at ASU – sometimes leading to improper demotions, terminations and/or resignations.

35. ASU is well aware of many of these instances of misconduct, and yet has failed, refused or neglected to take any action to address or remediate the hostile work environment, overt discrimination, retaliation and other abuses of Dr. Panchanathan's.

## Count I

### (Breach of Contract – Against Defendant ASU)

36. Dr. Sagers incorporates the allegations set forth above as though fully set forth herein.

37. A valid and enforceable employment contract exists between ASU and Dr. Sagers.

38. Dr. Sagers was meeting her metrics, performing her job functions, and therefore was performing her duties under the implied contract that exists between ASU and Dr. Sagers.

39. ASU breached the employment agreement with Dr. Sagers when, despite its knowledge of the improper conduct through the reports by Dr. Sagers and others at ASU, it allowed Dr. Panchanathan to abuse, bully, intimidate, retaliate, and otherwise treat Dr. Sagers hostilely, thereby interfering with her performance of her job.

40. ASU further breached its employment agreement with Dr. Sagers when it improperly demoted her and reduced her pay, even though she was meeting her performance metrics and upholding her own contractual obligations.

41. Dr. Sagers has been damaged as a result of ASU's breach of the employment agreement in an amount to be proven at trial.

42. As a direct and proximate result of ASU's conduct as described above, Dr. Sagers has suffered damages in an amount to be proven at trial.

/ / /

/ / /

6

## Count II

**(Breach of Contract – Constructive Discharge – Against Defendant ASU)**

43. Dr. Sagers incorporates the allegations set forth above as though fully set forth herein.

44. As discussed in detail above, the environment in ASU's Research Office was hostile because of Dr. Panchanathan's volatile behavior, harassment, and degrading treatment of employees.

45. Further, employees, like Dr. Sagers, were afraid to report Dr. Panchanathan's behavior because employees who had done so in the past were subject to increased scrutiny, demotion, and termination in retaliation for their actions.

46. Dr. Sagers and other employees reported the hostile and abusive working conditions to HR and/or other departments at ASU.

47. Other employees at ASU were terminated, demoted, or even resigned as a result of the hostile work environment which was unbearable at times.

48. As described above, Dr. Sagers was treated hostilely and was subject to abuse, volatile behavior, harassment, and retaliation at the hands of Dr. Panchanathan.

49. Further, Dr. Sagers was demoted from her position as an executive VPR, 100% administrative leadership position at ASU, to a 50% administrative position and 50% faculty position with a reduction in staff and a 25% reduction in salary.

50. The resulting change in position, duties, title, rank, location, opportunities for upward mobility, and salary, are such a significant departure from Dr. Sagers' VPR position, so as to constitute an entirely different and downgraded position at ASU, which is in effect a discharge under Arizona law.

51. As a result of Dr. Panchanathan and ASU's acts as described above, Dr. Sagers has been constructively discharged from her employment at ASU pursuant to Arizona law.

52. As a direct and proximate result of ASU's conduct as described above, Dr. Sagers has suffered damages in an amount to be proven at trial.

7

## Count III
### (Violation of Arizona Whistleblower Statutes – A.R.S. § 38-532 – Against all Defendants)

53. Dr. Sagers incorporates the allegations set forth above as though fully set forth herein.

54. As described above, on August 28, 2019, Dr. Sagers reported Dr. Panchanathan's improper, illegal, hostile and discriminatory conduct that created an atmosphere of volatility and hostility in the office to HR at ASU, which prompted an investigation into the climate of the office and Dr, Sagers' allegations regarding Dr Panchanathan.

55. Dr. Panchanathan's hostility towards Dr. Sagers grew exponentially following her report to HR, eventually leading to Dr. Panchanathan's attempted demotion of Dr. Sagers, as described above.

56. Further, following Dr. Panchanathan's attempted demotion of Dr. Sagers, Dr. Sagers, through the Grievance Letter, put ASU on notice of the improper attempted demotion, the underlying reason for the demotion – being Dr. Sagers' report to HR of Dr. Panchanathan's illegal and improper conduct, and put ASU on notice of the illegal, hostile, and discriminatory conduct by Dr. Panchanathan toward her.

57. Despite the baseless and improper demotion of Dr. Sagers, which was clearly motivated by Dr. Panchanathan's ill-will towards Dr. Sagers and in retaliation for her report against him, ASU moved forward with the improper demotion and on December 1, 2020, Dr. Sagers was officially demoted, stripped of her title, removed from the line of succession for Dr. Panchanathan's position, and suffered a reduction in pay, change in job functions, and change in staff support.

58. At the time of the demotion Dr. Sagers was meeting all of her performance metrics, expectations, and job functions and was outperforming Dr. Woodbury, who was given Dr. Sagers' duties and responsibilities.

59. Upon information and belief, Dr. Sagers' demotion was based on her report to HR and to ASU of Dr. Panchanathan's illegal, hostile, and discriminatory conduct.

8

60. As a direct and proximate result of Defendants' conduct as described above, Dr. Sagers has suffered damages in an amount to be proven at trial.

**Count IV**

**(Gender Discrimination Under Title VII of ACRA)**

61. Dr. Sagers incorporates the allegations set forth above as though fully set forth herein.

62. As described above, at the time of Dr. Panchanathan's stated intent to demote Dr. Sagers, Dr. Sagers was meeting all of her metrics, expectations and job functions.

63. In fact, Dr. Sagers had excelled in the Performance Review that was conducted at Dr. Panchanathan's request.

64. However, Dr. Panchanathan's attempt to demote Dr. Sagers and strip her of her title of VPR, which would remove Dr. Sagers from the line of succession for Dr. Panchanathan's position, precludes her from upward mobility within the research office at ASU and effectively prevents Dr. Sagers from obtaining another VPR position at another school.

65. Following Dr. Panchanathan's improper and baseless attempted demotion of Dr. Sagers, Dr. Woodbury, a less experienced, less qualified male colleague, was given Dr. Sagers' responsibilities as VPR and was then in a position to succeed Dr. Sagers as VPR.

66. At the time of the threatened demotion, Dr. Sagers was not only meeting all of her metrics, excelling at her functions, she was outperforming Dr. Woodbury on proposal submissions.

67. Dr. Sagers and other women within the research office at ASU have been subject to discriminatory treatment based on gender, leading to demotions, terminations, resignations, or being overlooked for opportunities which are filled by less-qualified male colleagues.

68. As a direct and proximate result of Defendants' conduct as described above, Dr. Sagers has suffered damages in an amount to be proven at trial.

9

## Count V

### (Gender Discrimination Under Title VII)

69. Dr. Sagers incorporates the allegations set forth above as though fully set forth herein.

70. As described above, at the time of Dr. Panchanathan's attempted demotion of Dr. Sagers, Dr. Sagers was meeting all metrics, expectations and job functions.

71. In fact, Dr. Sagers had excelled in the Performance Review that was conducted at Dr. Panchanathan's request.

72. However, Dr Panchanathan's attempted to demote Dr. Sagers and strip her of her title of VPR, which would remove Dr. Sagers from the line of succession for Dr. Panchanathan's position, precludes her from upward mobility within the research office at ASU and effectively prevents Dr. Sagers from obtaining another VPR position at another university.

73. Following Dr. Panchanathan's improper and baseless attempted demotion of Dr. Sagers, Dr. Woodbury, a less experienced, less qualified male colleague, was given Dr. Sagers' responsibilities as VPR and was then in a position to succeed Dr. Sagers as VPR.

74. At the time of the threatened demotion and Dr. Woodbury's promotion to her position, Dr. Sagers was not only meeting all of her metrics and excelling at her job functions, but she was also outperforming Dr. Woodbury on proposal submissions.

75. Dr. Sagers and other similarly situated women within the research office at ASU have been subject to discriminatory treatment based on gender, often leading to demotions, terminations, resignations, or being overlooked for opportunities which are filled by less-qualified male colleagues.

76. As a direct and proximate result of Defendants' conduct as described above, Dr. Sagers has suffered damages in an amount to be proven at trial.

## Count VI

### (Gender Discrimination Under Title IX – Against Defendant ASU)

77. Dr. Sagers incorporates the allegations set forth above as though fully set forth

10

herein.

78. ASU is a state institution and therefore is governed by the Education Amendments of Title IX which prohibit ASU from discriminating against Dr. Sagers on the basis of her gender.

79. As described in detail above, Dr. Sagers was discriminated against by ASU on the basis of her gender as a result of ASU's demotion of Dr. Sagers and replacement by a less-qualified male colleague whom she was outperforming.

80. ASU's gender-based discrimination against Dr. Sagers is in violation of Title IX.

81. As a direct and proximate result of ASU's conduct as described above, Dr. Sagers has suffered damages in an amount to be proven at trial.

## Count VII

### (Respondeant Superior)

82. Dr. Sagers incorporates the allegations set forth above as though fully set forth herein.

83. At all times relevant to this Complaint, Dr. Panchanathan, while acting in his capacity as Executive Vice President of ASU Knowledge Enterprise and Development and Chief Research and Innovation Officer, was an employee of ASU and was Dr. Sagers' direct supervisor.

84. Dr. Panchanathan acted toward Dr. Sagers and other employees within his department in a hostile, abusive, retaliatory and discriminatory manner as described in this Complaint while acting within the scope of his role as Executive Vice President of ASU Knowledge Enterprise and Development and Chief Research and Innovation Officer.

85. Upon information and belief, Dr. Panchanathan's illegal and improper acts as described herein were performed for the intended benefit of ASU.

86. As a direct and proximate result of Defendants' conduct as described above, Dr. Sagers has suffered damages in an amount to be proven at trial.

/ / /

11

## Count VIII

**(Breach of the Duty of Good Faith and Fair Dealing – All Defendants)**

87. Dr. Sagers incorporates the allegations set forth above as though fully set forth herein.

88. Dr. Sagers' employment contract with ASU contains an implied covenant of good faith and fair dealing.

89. ASU was required to act fairly towards Dr. Sagers in its dealings with her.

90. ASU breached that duty to Dr. Sagers when it allowed its agent, Dr. Panchanathan, to illegally discriminate against Dr. Sagers and to treat her hostilely and abusively, thereby interfering with her anticipated benefits flowing from the employment arrangement.

91. ASU further breached that duty when it improperly and baselessly demoted Dr. Sagers following her report of the hostile and illegal conduct of its agent.

92. As a direct and proximate result of Defendants' actions and/or inactions as described above, Dr. Sagers has suffered damages in an amount to be proven at trial.

## Count IX

**(Intentional Infliction of Emotional Distress – All Defendants)**

93. Dr. Sagers incorporates the allegations set forth above as though fully set forth herein.

94. ASU, through its agent Dr. Panchanathan, intentionally caused distress to Dr. Sagers through Dr. Panchanthan's abuse, discrimination, harassment, hostility, and reign of terror as described above.

95. The treatment was so egregious that Dr. Sagers and others subject to similar treatment not only would, but indeed did, find the conduct to be so outrageous, such that they each have made reports of Dr. Panchanthan's offending conduct, or have switched offices or resigned as a result of the conduct becoming intolerable.

96. The abuse, hostility, and overall egregious conduct of Dr. Panchanathan caused Dr. Sagers emotional distress and damage.

97. As a direct and proximate result of Defendants' conduct as described above, Dr. Sagers has suffered damages in an amount to be proven at trial.

### Prayer for Relief

Plaintiff demands judgment in her favor and against Defendants as follows:

A. Judgment in favor of Plaintiff against Defendants on all claims;

B. Awarding Plaintiff lost past and future wages, bonuses, compensation and other employee benefits;

C. Awarding Plaintiff compensatory, punitive and liquidated damages and such other equitable relief as may be appropriate;

D. Awarding Plaintiff her reasonable attorneys' fees and costs as authorized by law;

E. Awarding Plaintiff pre- and post- judgment interest on any amounts recoverable against Defendants at the highest rates allowed for by law; and

F. Awarding Plaintiff such other and further relief at law or in equity as the Court deems proper.

DATED 17th day of February 2021.

**RUTILA, SEIBT & NASH, PLLC**

/s/ *Kiri T. Semerdjian*
Gregory W. Seibt
Alexandra Mijares Nash
Kiri T. Semerdjian
6803 E. Main Street, Suite 1116
Scottsdale, Arizona 85251
Attorneys for Plaintiff