**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Sagers, | No. CV-21-00294-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona State University, et al., | |
| Defendants. | |

**INTRODUCTION**

In July 2018, Dr. Cynthia Sagers ("Dr. Sagers") was hired by Arizona State University ("ASU") as a vice president of research, at an annual salary of $275,000. (Doc. 17 ¶ 10.) Her direct supervisor was Dr. Sethuraman Panchanathan ("Dr. Panchanathan"). (*Id.* ¶ 11.)

In this action, Dr. Sagers alleges that she raised a grievance with ASU's human resources department in August 2019 about the environment of fear and intimidation that Dr. Panchanathan had created. (*Id.* ¶¶ 11-15.) Dr. Sagers further alleges that, after she raised this grievance, Dr. Panchanathan "assign[ed] her tasks that were outside the scope of her employment (and frankly below her qualifications), while the same tasks were not assigned to [her] male colleagues," and then subjected her to a "retaliatory demotion" that was later ratified by ASU. (*Id.* ¶¶ 16-42.) Dr. Sagers contends this demotion has stunted her career, significantly reduced her pay, and caused her to miss out on promotion opportunities that have instead been made available to "a less experienced, less qualified

male colleague." (*Id.*) Based on these allegations, Dr. Sagers asserts four claims in her operative pleading:

    (1)    A claim under 42 U.S.C. § 1983 against Dr. Panchanathan in his individual capacity, premised on the allegation that Dr. Panchanathan violated her First and Fourteenth Amendment rights (*id.* ¶¶ 43-52);

    (2)    A state-law claim against Dr. Panchanathan under A.R.S. § 38-532, an Arizona whistleblowing statute (*id.* ¶¶ 53-61);

    (3)    A Title VII gender discrimination claim against both Dr. Panchanathan and the Arizona Board of Regents ("ABOR") (*id.* ¶¶ 62-86); and

    (4)    A Title IX gender discrimination claim against both Dr. Panchanathan and ABOR (*id.* ¶¶ 87-111).

Now pending before the Court is a partial motion to dismiss filed by Dr. Panchanathan and ABOR (together, "Defendants"). In a nutshell, Defendants argue that Dr. Panchanathan should be dismissed as a defendant in Counts Two, Three, and Four. (Doc. 17.) In response, Dr. Sagers acknowledges that Dr. Panchanathan should be dismissed from Counts Three and Four but contends he is a proper defendant as to Count Two. (Doc. 18.) For the reasons that follow, the Court agrees with Defendants and thus grants the partial motion to dismiss in its entirety.

**BACKGROUND**

On February 17, 2021, Dr. Sagers initiated this action by filing a complaint. (Doc. 1.) This iteration of the complaint differed from the current version in that it named ASU (rather than ABOR) as the entity defendant, did not include a § 1983 claim, and included an array of additional state-law claims. (*Id.*)

On June 17, 2021, the parties filed a stipulated motion to extend the time to respond to the complaint, explaining that additional time was needed because Dr. Sagers "currently is evaluating Defendants' contentions pertaining to certain alleged deficiencies in Plaintiff's Complaint, and whether amendment may be necessary to address those alleged deficiencies in an effort to potentially avoid unnecessary motion practice and the costs

attendant thereto." (Doc. 12.) This request was granted and the response deadline was extended to July 2, 2021. (Doc. 14.)

On July 2, 2021, Dr. Sagers filed her operative pleading, the first amended complaint ("FAC"). (Doc. 16.)

On July 16, 2021, Defendants filed the pending partial motion to dismiss the FAC. (Doc. 17.)

On July 30, 2021, Dr. Sagers filed a response. (Doc. 18.)[1]

On August 6, 2021, Defendants filed a reply. (Doc. 19.)

## DISCUSSION

I. Legal Standard

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Ader v. SimonMed Imaging Inc.*, 324 F. Supp. 3d 1045, 1048 (D. Ariz. 2018) (internal quotation marks omitted). "Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). "The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

II. The Parties' Arguments

Defendants move under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss Dr. Panchanathan as a defendant from Counts Two, Three, and Four. (Doc. 17.) As for Counts Three and Four (which are claims under Title VII and Title IX), Defendants contend that dismissal is warranted because "neither statute authorizes suit against individuals." (*Id.* at 1, 3.) As for Count Two, Defendants contend that dismissal is

---

[1] Dr. Sagers has requested oral argument, but the request is denied because argument will not aid the decisional process.

- 3 -

warranted for two independent reasons: (1) it is barred by the Eleventh Amendment, because Dr. Panchanathan is being sued in his capacity as a state official; and (2) it is barred by A.R.S. § 38-533, which provides that Dr. Panchanathan is "[e]xempt" from suit because he "is an ASU employee." (*Id.* at 2-3.)

In response, Dr. Sagers concedes that "[a]s to Counts III and IV . . . these claims may be dismissed as to Dr. Panchanathan." (Doc. 18 at 1.) However, Dr. Sagers argues that Defendants' challenges to Count Two lack merit. As for the Eleventh Amendment, Dr. Sagers contends that "Dr. Panchanathan is not afforded immunity under the *Ex Parte Young* Doctrine, where as here, the suit is targeting the acts of an individual who happens to be a state employee for acts beyond the scope of his official authority." (*Id.* at 6-8.) Dr. Sagers also clarifies that "the claim [in Count Two] is being made against Dr. Panchanathan in both his official and individual capacity." (*Id.* at 8.) As for A.R.S. § 38-533, Dr. Sagers argues as an initial matter that "it does not apply to Dr. Panchanathan at all," but "rather relates to the victim of the retaliation related to the disclosure, which is Dr. Sagers." (*Id.* at 9.) On the merits, Dr. Sagers argues that A.R.S. § 38-533 is facially inapplicable here because it "is intended to protect whistleblowers from retaliation by the state officials they report against, and not . . . as a shield for the state tort-feasor to hide behind after willfully or negligently acting outside of their official authority." (*Id.* at 9-10.) At a minimum, Dr. Sagers argues that even though ASU had a whistleblowing policy in place at the time of the events in question,[2] resolution of any claim of immunity "would require resolution of factual issues going directly to the merits," and because Defendants failed to submit any evidence in support of their motion, "summary adjudication of the claim is not appropriate at this juncture." (*Id.* at 10-12.)

In reply, Defendants argue that Dr. Sagers cannot rely *on Ex Parte Young* to avoid their Eleventh Amendment claim because *Ex Parte Young* "does not apply to claims against state officials based on state law." (Doc. 19 at 2-3.) As for A.R.S. § 38-533, Defendants

---

[2] Dr. Sagers concedes in her response that "[t]here was a policy in place" (Doc. 18 at 10) and attaches a copy of the relevant policy (Policy 6-914) as an exhibit (Doc. 18-1).

- 4 -

contend there are no outstanding factual disputes that might preclude relief because Dr. Sagers has now filed a copy of the ASU whistleblowing policy that was in place at relevant times (*id.* at 3) and argue that, under § 38-533, Dr. Sagers's sole remedy is to exhaust her administrative remedies and then seek review in the Superior Court of Arizona under Arizona's Administrative Procedures Review Act (*id.* at 4).

III.     Analysis

The Court agrees with Defendants that Dr. Sagers's claim in Count Two is barred by A.R.S. § 38-533.[3] Given this conclusion, it is unnecessary to resolve whether that claim is also barred by the Eleventh Amendment.[4]

---

[3] Although Defendants seek relief under Rule 12(b)(1), which authorizes dismissal based on a lack of subject-matter jurisdiction, Defendants' challenge to Count Two based on A.R.S. § 38-533 is arguably better characterized as a Rule 12(b)(6) challenge because it goes to the validity of the underlying cause of action. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case. . . . Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.') (citations omitted). Nevertheless, the Ninth Circuit would discourage denying a Rule 12(b)(1) motion if it could be granted under Rule 12(b)(6). *Cf. Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018, 1027 (9th Cir. 2021) ("The Supreme Court has held that we may affirm a district court's judgment if the court mistakenly dismisses a claim for lack of subject-matter jurisdiction rather than for failure to state a claim—remand in those circumstances is unnecessary because it would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion. . . . Because there is no reason to remand to the district court simply to direct it to affix a new label to its order, we affirm the judgment.") (citations and quotations omitted). Thus, even if Defendants' challenge to Count Two under A.R.S. § 38-533 were treated as a Rule 12(b)(6) challenge, Defendants would be entitled to relief. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (court may dismiss under Rule 12(b)(b) based on "a lack of a cognizable legal theory").

[4] Although their briefing is not a model of clarity on the issue, Defendants appear to argue that the Eleventh Amendment would bar the state-law claim in Count Two even if it were asserted against Dr. Panchanathan in his individual capacity (which, Dr. Sagers argues in her response, it partly is). If this is Defendants' position, the Court is skeptical. *See, e.g., Pena v. Gardner*, 976 F.2d 469, 473-74 (9th Cir. 1992) ("A state law claim pendent to a federal claim that survives eleventh amendment analysis must itself be subjected to eleventh amendment scrutiny. The defendants, apparently conceding they were sued in their individual capacities, argue that *Pennhurst II* stands for the proposition that individual capacity claims against officials who are alleged to have violated state law are barred by the eleventh amendment. We disagree. In *Pennhurst II*, the Supreme Court held that the eleventh amendment bars suits in federal court, for both retrospective and prospective relief, brought against state officials acting in their *official* capacities alleging a violation of state law. The court distinguished the situation where a plaintiff brings suit against a state official acting in his *individual* capacity. . . . We conclude that the eleventh amendment will not bar pendent state claims by Pena against state officials acting in their

As background, Count Two is a claim under A.R.S. § 38-532. (Doc. 17 ¶¶ 53-61.) This whistleblowing statute is part of Title 38 of the Arizona Revised Statutes, which applies to "Public Officers and Employees." Under § 38-352(A), "[i]t is a prohibited personnel practice for an employee who has control over personnel actions to take reprisal against an employee for a disclosure of information of a matter of public concern by the employee to a public body that the employee reasonably believes evidences . . . [a] violation of any law . . . [or] [m]ismanagement, a gross waste or monies or an abuse of authority." Notably, although § 38-352 identifies various administrative remedies that are available to public employees who are subjected to this sort of prohibited personnel practice,[5] it also identifies certain remedies that an aggrieved public employee may recover in a court action.[6] For this and other reasons, Division One of the Arizona Court of Appeals has concluded that § 38-352 should be construed as creating "an alternative, permissive administrative remedy that leaves open the opportunity for an employee to file an original action in the superior court." *Walters v. Maricopa Cnty.*, 990 P.2d 677, 682 (Ariz. Ct. App. 1999). Division Two of the Arizona Court of Appeals has reached a different conclusion,

---

individual capacities.") (citations omitted); *Ashker v. Cal. Dep't of Corr.*, 112 F.3d 392, 393, 395 n.3 (9th Cir. 1997) (holding that "the Eleventh Amendment does not bar Ashker's state law claims" because "Ashker sued Brodeur and Astorga in their individual capacities" but clarifying that "[t]o the extent that an alternative claim was asserted against the defendants in their official capacities, that claim is, of course, barred").

[5] *See, e.g., id.* § 38-532(H) ("If an employee or former employee believes that a personnel action taken against him is the result of his disclosure of information under this section, he may make a complaint to an appropriate independent personnel board, if one is established or authorized pursuant to § 38-534, or to a community college district governing board, school district governing board or city or town council. If an independent personnel board has not been established or authorized, or if a school district governing board, a community college district governing board or a city or town council does not hear and decide personnel matters brought pursuant to this section, the employee or former employee may make a complaint to the state personnel board. A complaint made pursuant to this subsection shall be made within ten working days after the effective date of the action taken against him.").

[6] *See, e.g., id.* § 38-352(D) ("An employee or former employee against whom a prohibited personnel practice is committed may recover attorney fees, costs, back pay, general and special damages and full reinstatement for any reprisal resulting from the prohibited personnel practice as determined by the court."); *id.* § 38-352(K) ("An employee or former employee may also seek injunctive relief as is otherwise available in civil actions. A court may award reasonable attorney fees to an employee or former employee who prevails in an action pursuant to this section, but the award of attorney fees shall not exceed $10,000.").

holding "a classified public employee must exhaust his or her administrative remedies available under the system provided by §§ 11-351 through 11-356 before filing an action in superior court under . . . § 38-532." *Mullenaux v. Graham Cnty.*, 82 P.3d 362, 368 (Ariz. Ct. App. 2004).

Although this split of authority might appear to raise unsettled questions about whether a public employee (such as Dr. Sagers) may pursue a claim under § 38-532 in a court action despite not exhausting her available administrative remedies, it is unnecessary to attempt to reconcile *Walters* and *Mullenaux* here due to Dr. Sagers's status as a particular type of public employee—an employee of a state university. This status, in turn, implicates A.R.S. § 38-533, which is entitled "Exemptions" and provides as follows:

> This article does not apply to an employee or former employee of a state university or the board of regents which has in effect at the time a personnel action is taken against the employee a rule or provision for the protection of its employees from reprisal for the disclosure of information to a public body, except that the employee or former employee may appeal the final administrative decision to the superior court as provided in title 12, chapter 7, article 6. Notwithstanding section 12-910, an employee or former employee who has been dismissed is entitled to a trial de novo in superior court.

(*Id.*) Put simply, § 38-533 provides that although a public employee who is subjected to an adverse personnel action based on whistleblowing activity is ordinarily entitled to pursue the remedies set forth in § 38-532 (which, as discussed, may potentially be pursued in a court action), a different set of procedures applies if two conditions are satisfied: *first*, the employee was employed by "a state university or the board of regents"; and *second*, that employer had "in effect at the time [the] personnel action [was] taken . . . a rule or provision for the protection of its employees from reprisal for the disclosure of information to a public body." If both conditions are satisfied, § 38-532 "does not apply" and the employee's only recourse is to follow the procedures set forth in the employer's internal policy, with an eventual right to appeal any adverse administrative decision to the state superior court.

Arizona courts, as well as federal courts applying Arizona law, have construed § 38-533 in this manner. In *Arizona State Board of Regents v. Arizona State Personnel Board*, 953 P.2d 904 (Ariz. Ct. App. 1996), an ASU employee who believed she had been subjected to whistleblower retaliation filed both an administrative complaint with the Arizona State Personnel Board, in which she alleged a violation of § 38-352, and an internal grievance with ASU. *Id.* at 905-06. ASU, in turn, moved to dismiss the administrative complaint on jurisdictional grounds, arguing that it was barred by § 38-533. The Arizona Court of Appeals agreed with ASU, holding that "ASU [was] exempt from the Whistleblower Act" under § 38-533 because the employee was employed by ASU and "ASU had a whistleblower protection policy in effect at the time [the] allegedly retaliatory personnel actions were taken . . . ." *Id.* at 907. The court also rejected the plaintiff's argument that § 38-533 should be deemed inapplicable because ASU's internal policy was less protective and comprehensive than § 38-532, holding that "[t]he legislature has nowhere indicated that universities must protect whistleblowers from every type of adverse personnel action possible. ASU has adopted a policy that protects employees from the most severe adverse actions as well as most other unfavorable actions that could be taken in retaliation against a whistleblower. These protections are clearly sufficient to entitle ASU to be exempt from the statutory whistleblower provisions . . . ." *Id.* at 908.[7]

In *McCormick v. Arizona Board of Regents*, 2007 WL 2948981 (D. Ariz. 2007), the court dismissed a § 38-532 claim under similar circumstances. There, an employee of Northern Arizona University ("NAU") filed a lawsuit in federal court in which he asserted, among other things, that he had engaged in "a protected act of whistle blowing and that

---

[7] In *Arizona Board of Regents*, the Arizona Court of Appeals answered two questions: (1) whether "§ 3-533 expressly exempts Arizona State University from whistleblower complaints" and (2) whether "§41-1062 allows an agency to exempt itself from the right to counsel and subpoena provisions of the statute . . . ." *Arizona State Bd. of Regents v. Arizona State Pers. Bd.*, 985 P.2d 1032, 1033 (Ariz. 1999). The Arizona Supreme Court granted review as to the second issue and reversed. *Id.* In the course of doing so, the Supreme Court clarified that it would preserve the Court of Appeals' analysis as to § 38-533: "Because we agreed with the court of appeals that § 38-533 expressly exempts Arizona State University from whistleblower complaints brought before the State Personnel Board, we denied review on that issue." *Id.* at 1032. Thus, the Court views the Court of Appeals' interpretation of § 38-533 as controlling under Arizona law.

[his] subsequent termination was therefore improper." *Id.* at *2. In response to a motion to dismiss, the plaintiff more specifically argued that his whistleblowing activity "was protected by A.R.S. § 38-532." *Id.* Nevertheless, the court concluded that "[b]ecause [NAU] had a protective policy in place at the time of Plaintiff's termination, as required by § 38-533, Defendant is exempt from § 38-352, the section on which Plaintiff now bases his whistle blower claim." *Id.* at *3. Although NAU did not actually proffer its internal policy during the motion-to-dismiss briefing process, the court held that "the policy can readily be determined from sources whose accuracy cannot reasonably be questioned and therefore is subject to judicial notice." *Id.*

And again, in *Lee v. Arizona*, 2011 WL 2580400 (D. Ariz. 2011), the plaintiff was "an Associate Professor at NAU" who filed a federal lawsuit in which she asserted, among other things, a claim "under Arizona's 'whistleblower' statute, A.R.S. § 38–532" premised on the allegation "that as a result of her May 27, 2008 email to Dean Schulz, Defendants have retaliated against Plaintiff by placing her on leave and instigating an investigation of Plaintiff that ultimately led to her dismissal." *Id.* at *1-2. Because the plaintiff was "clearly an employee of a state university or the board of regents" and the undisputed evidence showed that NAU "had in effect 'a rule or provision for the protection of its employees from reprisal'" at the time of the challenged personnel action, the court concluded that the plaintiff's § 38-532 claim was barred by § 38-533. *Id.* at *9.

Given this backdrop, the Court has little trouble concluding that Dr. Sagers's claim in Count Two is barred by § 38-533. It is undisputed that Dr. Sagers qualifies as "an employee or former employee of a state university"[8] and it is also undisputed that, at the time of the challenged personnel action (*i.e.,* Dr. Sagers's demotion, which is alleged to have occurred in 2020 or on January 1, 2021), ASU had adopted "a rule or provision for the protection of its employees from reprisal for the disclosure of information to a public body." Although Defendants somewhat inexplicably failed to provide (or even refer to) this policy in their motion, Dr. Sagers provided a copy with her response (Doc. 18-1), and

---

[8] Dr. Sagers concedes she was (and is) an employee of ASU. (Doc. 17 ¶ 10.)

the policy is, at any rate, subject to judicial notice for the same reasons as the NAU policy in *McCormick*.

Dr. Sagers's arguments as to why § 38-533 should be deemed inapplicable lack merit. Her primary argument appears to be that, for policy reasons, the Court should refuse to adopt any construction of § 38-533 that might chip away at the protections afforded to whistleblowers. But it is the role of the legislature, not the courts, to make policy choices, and here the Arizona legislature has made such a choice through its enactment of § 38-533. *Arizona State Bd. of Regents,* 953 P.2d at 907 ("The legislature has nowhere indicated that universities must protect whistleblowers from every type of adverse personnel action possible."). Dr. Sagers also suggests that unresolved factual issues make it impossible to rule on the applicability of § 38-533 at this juncture, but the Court disagrees. As discussed in *Arizona State Board of Regents, McCormick*, and *Lee*, the exemption applies so long as the plaintiff was an employee of a public university and the university had a policy in place at the time of the challenged personnel action. It is undisputed that both conditions are satisfied here.

Accordingly,

**IT IS ORDERED** that Defendants' partial motion to dismiss (Doc. 17) is **granted**. Dr. Sagers's only remaining claims are (1) a § 1983 claim in Count One against Dr. Panchanathan; (2) a Title VII claim in Count Three against ABOR; and (3) a Title IX claim in Count Four against ABOR.

Dated this 19th day of October, 2021.

Dominic W. Lanza
United States District Judge

- 10 -